IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

DAVID S.,[1]

        Plaintiff,

v.

COMMISSIONER, Social Security
Administration,

        Defendant.

Case No. 6:18-cv-01160-SU

**OPINION
AND ORDER**

SULLIVAN, United States Magistrate Judge:

    Plaintiff David S. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for child's insurance benefits ("CIB") and supplemental security income ("SSI") pursuant to the Social Security Act

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and last name initial of non-government parties and their immediate family members.

(the "Act"). (Docket No. 1). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* (Docket No. 6). For the reasons that follow, the Commissioner's final decision is AFFIRMED and this case is DISMISSED.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for CIB in January 2015 and an application for SSI in February 2015. Tr. 15, 259–60, 261–66.[2] He alleged an onset date for both applications of September 1, 2005. *Id*. His applications were denied initially and upon reconsideration. *Id.*; *see also* Tr. 74–83, 84–93, 107–118, 119–30, 131–42. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on May 11, 2017. Tr. 43–70, 184–85. On August 29, 2017, an ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 15–27. The Appeals Council denied plaintiff's request for review on April 25, 2018, making the ALJ's decision the final decision of the Commissioner. Tr. 1–6. This appeal followed.

## FACTUAL BACKGROUND

Born in 1989, plaintiff was 16 years old on his alleged onset date and 27 years old on the date of his hearing. Tr. 74, 49. He completed high school, as well as some college coursework, and has past work experience as an automotive detailer, fleet truck washer, and parking lot maintenance worker. Tr. 49, 288. He alleged disability due to major depressive disorder and dysthymia. Tr. 287.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d

---

[2] "Tr." citations are to the Administrative Record. (Docket No. 13).

498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

As relevant here, an applicant qualifies for CIB if he "is under a disability which began prior to age 22, and was dependent on the insured at the time of the insured's death." *Astrue v. Capato ex rel. B.N.C.*, 566 U.S. 541, 547 (2012) (citing 42 U.S.C. § 402(d)(1)).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At

step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that plaintiff had not attained the age of 22 and had not engaged in substantial gainful activity since the alleged onset date. Tr. 17. At step two, the ALJ found that

plaintiff had had the following severe impairments: depression, anxiety, and substance abuse and addiction disorder. Tr. 18.

At step three, the ALJ found that plaintiff did not have an impairment or combination thereof that met or equaled a listed impairment. *Id*. The ALJ found that plaintiff had the RFC to perform a full range of work at all exertional levels, but was limited to "no more than frequent interactive contact with the public." Tr. 19. At step four, the ALJ found that plaintiff was capable of performing his past relevant work as a street sweeper. Tr. 25. In the alternative, the ALJ made a step five finding that considering plaintiff's age, education, work experience, and RFC, other jobs existed in the national such that plaintiff could sustain employment despite his impairments. Tr. 26. Specifically, the ALJ found plaintiff was capable of performing the jobs of battery stacker, lumber sorter, and hand packager. *Id.*; *see also* Tr. 65. The ALJ thus found plaintiff was not disabled within the meaning of the Act. Tr. 27.

## ANALYSIS

Plaintiff asserts the ALJ erred by: (1) failing to provide clear and convincing reasons for rejecting his subjective symptom testimony; (2) improperly weighing the medical opinion evidence of record; (3) failing to provide germane reasons for rejecting the lay witness testimony of his father; (4) omitting a coworker and supervisor limitation in his RFC; and (5) concluding plaintiff was capable of past relevant work at step four.

### I.     Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."

*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Social Security Ruling ("SSR") 16-3p clarified that ALJs are not tasked with "examining an individual's character" or propensity for truthfulness, and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole. *See* SSR 16-3p, *available at* 2017 WL 5180304 (Oct. 25, 2017). If the ALJ's subjective symptom analysis "is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citation omitted).

At the hearing, plaintiff testified that his inability to interact with coworkers and follow instructions would preclude him from returning to work. Tr. 53. He further explained that a "major panic attack" caused him to cancel a scheduled job interview. Tr. 55. Plaintiff testified that in 2014 he "was having suicidal thoughts multiple times a day," but that a combination of therapy and medication "made the most difference." Tr. 58. He testified that his depression affected his energy and motivation levels as well as his ability to concentrate and focus. Tr. 59. Finally, his anxiety made social interaction difficult, and that he could not "go to new places" or "meet new people without having an elevated level of anxiety that interferes with basic communication." *Id*.

After thoroughly discussing plaintiff's testimony, the multiple medical opinions of record, and the lay testimony, the ALJ found that, although plaintiff's impairments could reasonably be expected to cause some of his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." Tr. 25.

The Commissioner argues the ALJ provided two clear and convincing reasons for discounting plaintiffs testimony: plaintiff's response to testing that showed "exaggeration of [his] mental impairments"; and his allegations conflicted with his activities of daily living.

### A.    Exaggeration

The Ninth Circuit has held that a claimant's "tendency to exaggerate" can form a basis to discount subjective symptom testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

On a 2015 Millon Clinical Multiaxial Inventory-III ("MCMI-III") assessment, despite providing a valid response profile, the medical provider noted that plaintiff "endorsed items similar to patients who magnify their distress," and, therefore, "his profile should be interrupted with caution." Tr. 427. The ALJ noted that he considered this objective finding in his evaluation of plaintiff's mental impairments, specifically his reported difficulties with social interaction. Tr. 21; *see also* Tr. 23 (discounting plaintiff's reports that "he is essentially confined to [his] home" based, in part, on the exaggeration finding of the MCMI-III assessment). The ALJ was permitted to consider such an objective finding under *Tonapetyan* and it was thus a clear and convincing reason for the ALJ to discount plaintiff's subjective reports. 242 F.3d at 1148; *see also Reynolds v. Astrue*, 2010 WL 3516895, at *6 (E.D. Wash. Sept. 3, 2010) (affirming ALJ's reliance on "objective medical evidence of exaggeration of limitations and symptoms" in discounting testimony).

### B. Activities of Daily Living

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639.

Throughout the record, plaintiff engaged in a number of activities of daily living that were inconsistent with his testimony cited by the ALJ. For example, plaintiff reported independently caring for "his sister's three children" and animals for nearly a week. Tr. 22 (citing Tr. 409). He explained he helped a "family friend move his business from one place to another," which required approximately 50 hours of manual labor during the week. Tr. 22 (citing Tr. 454). Moreover, though he reported feeling anxious as he was assisting with the move, he nonetheless "stuck it out and made it through." *Id*. Finally, plaintiff reported that "he was teaching himself how to code and program," learning to play guitar, and played complex video games for extended periods. Tr. 22 (citing Tr. 359, 361, 409). This evidence contradicts his testimony that he was incapable of interacting with others, unable to following instructions, lacked the ability to concentrate, and had diminished energy and motivations levels. *See, e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (finding the claimant's ability to care for young children undermined "testimony about her daily activities"); *Robert M. v. Berryhill*, No. 6:18-cv-00559-MC, 2019 WL 3337902, at *6 (D. Or. July 25, 2019) (finding the claimant's ability to complete "odd jobs contradict[ed] his claims that he was unable to work due to . . . no energy"); *Nathan H. v. Comm'r, Soc. Sec. Admin.*, No. 3:16-cv-2375-AC, 2018 WL 3638125, at *5 (D. Or. July 10, 2018) (finding the claimant's ability to play "video games" contradicted his testimony relating to concentration), *report and recommendation adopted*, 2018 WL 3636533 (D. Or. July 31, 2018). At most, plaintiff offers an

alternative interpretation of his daily activities; however, as the Ninth Circuit has instructed, where an ALJ's interpretation of the record is reasonable and "supported by substantial evidence," courts may not engage in "second-guess[ing] it." *See Rollins*, 261 F.3d at 857 (citing *Fair v. Bowen,* 885 F.2d 597, 604 (9th Cir. 1989)).[3]

In sum, the ALJ provided clear and convincing reasons for discrediting plaintiff's subjective symptom testimony relating. The ALJ's assessment of plaintiff's subjective symptom testimony is therefore affirmed.

## II. Lay Witness Testimony

Plaintiff alleges that the ALJ improperly rejected the lay witness testimony of his father, Scott S. Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In order to reject such testimony, an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r,* 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012)). Further, where an ALJ provides clear and convincing reasons for rejecting a claimant's testimony and the lay testimony is "similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay] testimony." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009); *see also Molina*, 674 F.3d at 1121–22.

---

[3] Although not relied on explicitly by the Commissioner, the ALJ validly found plaintiff did not have "symptoms related to concentration, memory or persistence" based on Thomas Potter's, Ph.D., thorough clinical examination discussed in more detail below. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (inconsistencies between a claimant's testimony and the medical record can form a basis to reject testimony).

In a third-party function report, Scott S. wrote that plaintiff had no problems with personal care, did not prepare meals, but did his own laundry though he sometimes required reminders. Tr. 325–26. He wrote that plaintiff left the house infrequently, but was able to do so independently and either walked or a drove a car. Tr. 326–27. He wrote that plaintiff's impairments impacted his ability to complete tasks, concentrate, understand, follow instructions, and get along with others. Tr. 329. Finally, he wrote that plaintiff followed spoken instructions poorly. *Id*.

The ALJ gave the opinion "little weight." Tr. 25. The ALJ explained that the "descriptions of [plaintiff] do not establish clinical symptoms as opposed to volitional behaviors, and do not recognize the possible effects of substance abuse on the claimant's activities or lack of them." *Id*.

The Commissioner asserts this was proper because an "ALJ may discount limitations that are self-imposed and stem from a lack of motivation." Def.'s Br. 7 (citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001)). *Osenbrock* affirmed the rejection of the claimant's "self-limited" pain testimony where medical evidence "indicated that the claimant's current restriction of activities of daily living are a lifestyle *choice.*" 240 F.3d at 1166 (emphasis in original). Plaintiff takes issue with the ALJ's reasoning and asserts the ALJ's disbelief of his symptoms is not a valid basis to reject competent lay witness statements. Pl.'s Op. Br. 20.

*Osenbrock* does not squarely address whether an ALJ may discount self-imposed limitations that relate exclusively to substance abuse issues, but the Ninth Circuit has more recently instructed district courts to exercise caution in the mental health arena. *Cf. Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (explaining that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation") (internal quotation marks omitted). The Court need not resolve the issue, however. Here, a review of lay testimony reveals that it is substantially similar too, if not less limiting than, plaintiff's testimony,

which the ALJ provided clear and convincing reasons for discounting. As such, it follows that the ALJ also gave germane reasons for rejecting the statement of Scott S. *See Valentine*, 574 F.3d at 694.

The ALJ is affirmed as to this issue.

### III. Medical Opinion Evidence

In social security cases, there are three categories of medical opinions: those that come from treating, examining, and non-examining doctors. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physicians." *Id.* at 1202. Opinions supported by explanations are given more authority than those that are not, as are opinions of specialists directly relating to their specialties. *Id.* "ALJ may reject the uncontradicted medical opinion of a treating physician only for 'clear and convincing' reasons supported by substantial evidence in the record." *Id.* (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216).

#### A. Treating Psychiatrist: Ken Erickson, M.D., Ph.D.

In a March 2017 letter to plaintiff's attorney, plaintiff's psychiatrist, Dr. Erickson, wrote that plaintiff would be "unable to hold down a job, even a volunteer position in the community of two hours/day," that plaintiff was not capable of going to the "grocery store alone," and as a result of his impairments was "unable to concentrate, interact with people, [or] plan out tasks." Tr. 459. In response to a question as to whether there was "any indication of a problem with alcohol or drugs," the doctor wrote: "No." *Id.*

The ALJ provided multiple reasons for rejecting Dr. Erickson's opinion, the first of which suffices as a specific and legitimate reason. The ALJ noted that Dr. Erickson's "finding that there was no indication of a problem with drugs or alcohol [was] inconsistent with the record," explaining that on that "basis alone the [ALJ gave the] opinion little weight." Tr. 24.

Inconsistency between a doctor's opinion and his treatment notes is a specific and legitimate reasons to reject a medical opinion. *See Valentine*, 574 F.3d at 692–93 (holding that a conflict with treatment notes is a specific and legitimate reason to reject treating physician's opinion). The ALJ noted that plaintiff had "a significant history of substance abuse known to Dr. Erickson[.]" Tr. 24 (citing Tr. 358–75). Indeed, the doctor's own treatment notes chronicled plaintiff's drug and alcohol use, which was inconsistent with Dr. Erikson's conclusion that there was no indication of a problem. *See, e.g.*, Tr. 359 (reporting "smoking THC about 2–3 times per day"); Tr. 359 (reporting that plaintiff would "sit out back, smoke THC, and 'think'"); Tr. 361 (reporting marijuana use); Tr. 371 (reporting "THC helped"); Tr. 376 (reporting drinking to excess when "very depressed" and that alcohol "numbs him").

Plaintiff asserts that Dr. Erickson "was not asked whether [plaintiff] had a history of drug or alcohol abuse," but instead evaluated plaintiff's "functioning in 2017[.]" Pl.'s Op. Br. 10. However, the plain text of the letter is unambiguous. It asks whether there was "*any indication* of a problem with alcohol or drugs." Tr. 459. Dr. Erickson answered: "No." *Id*. And even if that language were subject to more than one rational interpretation, the Court is required to defer to the ALJ's reasonable interpretation in circumstances such as these. *See Burch*, 400 F.3d at 679 ("Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

The inconsistency identified by the ALJ was a specific and legitimate reasons supported by the record to reject Dr. Erickson's opinion.[4]

**B.      Reviewing Doctors: Winfred Ju, Ph.D. & Dorothy Anderson, Ph.D.**

Dr. Ju reviewed the medical record in March 2015 and assessed moderate limitations in plaintiff's ability to remember locations and work-like procedures; understand and remember detailed instructions; carry out very short and simple instructions; carry out detailed instructions; maintain attention and concentration; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism; and set realistic goal or make plans. Tr. 79–81. The doctor further opined that plaintiff had marked limitations in his ability to carry out detailed instructions. Tr. 81. Four months later, Dr. Anderson reviewed the medical record and affirmed Dr. Ju's opinion, except that she found that plaintiff was not significantly limited in his ability to remember locations and work-like procedures. Tr. 114–16.

The ALJ gave the opinions less than full weight because "Dr. Potter found him to have no cognitive limitations after testing." Tr. 21.[5] Dr. Potter performed a battery of assessments on which he based his opinion. *See* Tr. 462 (explaining assessment procedure included clinical interview, review of available records and psychosocial information, mental status exam, checklist of activities of daily living, and patient stress questionnaire); Tr. 466 (describing test results in

---

[4] Because the Court concludes the ALJ properly rejected Dr. Erikson's opinion based on an inconsistency, the Court need not discuss the alternative rationales articulated by the ALJ and the parties. *See Djuana J. v. Berryhill*, No. 3:17-cv-1842-SI, 2019 WL 281288, at *5 (D. Or. Jan. 22, 2019) (explaining that where an ALJ supplies "at least one specific, legitimate reason, the Court need not" reach alternative rationales).

[5] As will be discussed in more detail in section IV, the ALJ gave the opinion of consultative examiner Dr. Potter, that plaintiff had "no limitation in understanding, remembering, and carrying out both simple and complex matters," significant weight based on his clinical testing. Tr. 21.

narrative form). The ALJ was entitled to credit Dr. Potter's opinion over the nonexamining reviewing doctors based on his clinical testing and because the nonexamining doctors' moderate limitation additionally lacked support in the record. Tr. 468. *See Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004) (examining physician's opinion carries more weight than a non-examining reviewing or consulting physician's opinion); *Lester v. Chater,* 81 F.3d 821, 831 (9th Cir. 1995) (nonexamining medical source opinion is not substantial evidence unless it is supported by other evidence in record); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (nonexamining opinion absent independent clinical findings is insufficient to reject the opinions of an examining medical source). As such, the ALJ was permitted to reject the nonexamining doctor's in favor of a doctor who actually examined plaintiff.

## IV. RFC Formulation

Plaintiff next asserts the ALJ failed to include all the limitation contained in Dr. Potter's opinion in his RFC. As noted, the ALJ assigned "significant weight" to Dr. Potter's conclusion regarding mental limitations.

The RFC is the most a person can do despite his physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. The RFC assessment must be "based on all of the relevant medical and other evidence," including the claimant's testimony as well as that of lay witnesses. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

In May 2017, Dr. Potter compiled a psychological report of plaintiff. Tr. 462–68. As relevant here, the doctor opined that plaintiff had no limitations in his ability to understand and complete simple instructions and that his concentration, attention, persistence were adequately sustained during testing. Tr. 466. Dr. Potter concluded plaintiff had no limitations in his ability to

interact with the public, and a mild limitation[6] in his ability to interact appropriately with supervisors and co-workers. Tr. 468. In the narrative section of the opinion, the doctor explained that plaintiff "would most likely be able to develop coworker and supervisor relationships, however sustaining these interactions overtime may be problematic as he may become withdrawn." Tr. 466.

Plaintiff asserts that, based on Dr. Potter's opinion, the ALJ should have included limitation based on plaintiff's inability to "*sustain* [coworkers or supervisors] interactions over time." Pl.'s Op. Br. 8 (emphasis in original). The Commissioner correctly observes, however, that Dr. Potter did not opine that plaintiff has an *inability* to interact with coworkers and supervisors. Def.'s Br. 5. Rather, the doctor "indicated only that sustaining such interactions over time *may be problematic*." *Id*. (emphasis added) (citing Tr. 466).

At least one court in this district has rejected a nearly identical argument regarding equivocal language in analogous circumstances. *Fern v. Colvin*, 6:12-cv-00176-KI, 2013 WL 1326605, at *7 (D. Or. Mar. 28, 2013) ("Plaintiff would have the ALJ read Dr. Northway's opinion to mean Fern 'would have' difficulty maintaining sustained attention, but Dr. Northway's opinion was more equivocal than that, using the word 'might.'"). As such, the ALJ was not required to include such equivocal language in plaintiff's RFC. *Id.*; *see also Khal v. Colvin*, No. 3:14-CV-01361-AA, 2015 WL 5092586, at *7 (D. Or. Aug. 27, 2015) ("An ALJ is not required to incorporate limitations phrased equivocally into the RFC."), *aff'd sub nom.*, 690 F. App'x 499 (9th Cir. 2017); *Glosenger v. Comm'r of Soc. Sec. Admin.*, No. 3:12-cv-01774, 2014 WL 1513995, *6

---

[6] The form defined "mild limitations" as "[f]unctioning in this area independently, appropriately, and effectively, and on a sustained basis is *slightly limited*." Tr. 467 (emphasis added).

(D. Or. Apr. 16, 2014) (affirming the ALJ's rejection of functional restrictions assessed by a doctor who used "equivocal language ('might do better' and 'would also likely require')").

Moreover, the ALJ thoroughly explained his reasoning for rejecting Dr. Potter's mild supervisory and co-workers limitation, reasoning that "Dr. Potter appear[ed] to rely on [plaintiff's] withdrawn behavior at the examination" but that the record reflected that his "behaviors with his regular providers [did] not reflect this trait." Tr. 21; *see also George A. v. Berryhill*, 2019 WL 1875523, at *5 (C.D. Cal. Apr. 24, 2019) (holding that "[g]iven the absence evidence that [the claimant's] mild [] impairments limited [his] ability to perform any work-related activities, the ALJ was not required to include additional [] limitations in his RFC assessment or hypothetical to the VE").

The ALJ's RFC contained the limitations supported by substantial evidence and is affirmed.

## V. Step Four Finding

Finally, plaintiff asserts that because the ALJ found at step one that plaintiff "had not engaged in substantial gainful activity since" the alleged onset date in September 2005, the ALJ erred at step four finding that plaintiff could perform his past relevant work. The Court agrees. The error, however, was harmless in light of the ALJ's alternative step five finding.

Under the regulations, "[p]ast relevant work is work that [a claimant has] done within the past 15 years, *that was substantial gainful activity*, and that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1) (emphasis added). Here, the ALJ's step one finding that plaintiff had not engaged in substantial gainful activity foreclosed a step four finding that he was capable of returning to any past relevant work because he had none. However, the error was harmless given the ALJ's alternative step five finding. *See Liggett v. Astrue*, 2011 WL

2940347, at *2 (C.D. Cal. July 20, 2011) (holding the ALJ's inconsistent findings at step one that plaintiff had not engaged in "substantial gainful activity" and at step four that plaintiff could perform "past relevant work" was harmless error "in light of the ALJ's alternative step five finding").

Because the ALJ met the Commissioner's burden at step five, remand is not required.

## CONCLUSION

For these reasons, the Commissioner's decision denying plaintiff's applications for CIB and SSI is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 2nd day of January, 2020.

/s/ Patricia Sullivan

PATRICIA SULLIVAN
United States Magistrate Judge